KUSKIN, J.T.C.
These matters involve challenges to the validity of tax exemptions granted by defendant City of Jersey City to defendant Battery View Senior Citizens Housing, Ltd. (Battery View) for tax years 1998, 1999, 2000, and 2001. The Town of Secaucus is a plaintiff for each of the years under appeal, and the City of Bayonne and Township of North Bergen are additional plaintiffs for tax years 2000 and 2001. Pursuant to R. 2:5-1(h), the Attorney General of New Jersey was notified of allegations by plaintiffs challenging the constitutionality of certain statutes, and the Attorney General intervened as a party defendant.
Plaintiffs have asserted the following three grounds for their appeals: (1) Battery View’s tax exemption improperly includes an exemption for land taxes in violation of the applicable provisions of the Limited-Dividend Nonprofit Housing Corporations or Associations Law, N.J.S.A. 55:16-1 to -22 (Limited-Dividend Law) and its successor, the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 to -20 (Long Term Law); (2) if any provision of either Law permits a tax exemption for land, the provision exceeds the scope of tax exemptions authorized by the New Jersey Constitution; and (3) the cumulative financial return received by the parties owning partnership interests in Battery View exceeded the maximum amount permitted by applicable statutes and by the partnei’ship’s Certificate of Limited Partnership.
Battery View contends that the exemption granted to it complies with the Limited-Dividend Law, the Long Term Law and the New Jersey Constitution, and has moved for summary judgment. The motion does not address plaintiffs’ contentions as to financial return. Defendant City of Jersey City joins in the motion. Plaintiff Town of Secaucus responded to the motion, and Bayonne and North Bergen joined in the arguments advanced by Secaucus.
The following material facts relevant to the motion are undisputed. The property at issue in these appeals is a multi-family housing project for senior citizens (Project) owned by Battery View. The Project is located in Jersey City at 34-68 Montgomery Street, and is designated on the City’s Tax Map as Block 71, Lot *571 Plot A. The Project consists of land, and a 237 unit apartment building and related improvements. The apartments are affordable to low income families.
In September 1973, the Jersey City municipal council adopted a resolution (Resolution) authorizing a tax exemption for the Project under the Limited-Dividend Law. The Resolution provided that “the proposed development and improvements [to be constructed by Battery View] shall be exempt from all property taxation as provided in paragraph 18 of the Limited-Dividend Law (Paragraph 18 of Chapter 184 of Laws of 1949 as amended and supplemented).” In June 1974, the City and Battery View signed a Financial Agreement (Financial Agreement) which provided that the Project would enjoy the “tax exemption established by N.J.S.A. 55:16-18.” Both the Resolution and the Financial Agreement contemplated that Battery View would make payments in lieu of taxes (“PILOT”) to Jersey City computed in accordance with the formula set forth in the Financial Agreement. Battery View has made all required PILOT payments. Jersey City has not imposed an assessment on the land included in the Project (other than a land assessment of $6,188,000 included in the assessor’s list of tax exempt properties as required by N.J.S.A. 54:4-27), and, as a result, Battery View has paid no separately designated land taxes with respect to the Project.
Because the Resolution and Financial Agreement define the tax exemption for the Project with reference to the Limited-Dividend Law, specifically N.J.S.A. 55:16-18, the Financial Agreement, by its terms, complies with the statute. As a result, the first issue to be addressed with respect to the pending motion is one of statutory interpretation. As of the dates of adoption of the Resolution and signing of the Financial Agreement, the Limited-Dividend Law governed the exemption granted to Battery View. In 1992, the Long Term Law superseded the Limited-Dividend Law.
 The tax exemption language of the Limited-Dividend Law provides, in pertinent part, as follows:
When the governing body of any municipality in which a project of a housing corporation or housing association is or will be located, by resolution finds that the project is or will be an improvement made for the purposes of the clearance, *572 replanning, development, or redevelopment of any blighted area (as defined in any law of this State) within such municipality, or for any of such purposes, then such project and improvement shall be exempt from all property taxation; provided, that in lieu of taxes the housing corporation or housing association owning said project shall make to the municipality payment of an annual service charge for municipal services supplied to said project, in such amount, not exceeding the tax on the property on which the project is located for the year in which the undertaking of said project is commenced or 15% of the annual gross shelter rents obtained from the project, whichever is the greater, as may be agreed to by the municipality and the housing corporation or housing association and approved by the [public housing and development authority in the Department of Community Affairs].
[N.J.S.A. 55:16-18.]
The Limited-Dividend Law does not define the term “improvement” but does define the term “project" as follows:
The term “housing project” or “project” shall mean any work or undertaking to provide decent, safe, and sanitary dwellings for families in need of housing; such undertaking may include any building's, land (including demolition, clearance or removal of buildings from land), equipment, facilities, or other real or personal properties or interests therein which are necessary, convenient or desirable appurtenances of said undertaking, such as, but not limited to, streets, sewers, water, utilities, parks; site preparation; landscaping, and administrative, community, health, recreational, educational, welfare, commercial, or other facilities, or to provide any part or combination of the foregoing.
[N.J.S.A. 55:16-3(6).]
Defendants argue that, because the definition of “project” includes “land,” the exemption language in N.J.S.A. 55:16-18 must be read to include land. However, the statutory language does not require that conclusion. N.J.S.A. 55:16-18 provides that a “project” qualifies for tax exemption only if “the project is or will be an improvement.” If so, the “project and improvement shall be exempt from all property taxation.” N.J.S.A. 55:16-18.
An improvement is defined in Black’s Law Dictionary as follows:
A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc.
[Black’s Law Dictionary 682 (5th ed.1968).]
The general dictionary definition of improvement is “something that enhances value or excellence.” Memam Webster’s Collegiate Dictionary 585 (10th ed.1996).
*573 Whether the Limited-Dividend Law permitted a tax exemption for improvements only or for land and improvements can be resolved by reference to the Long Term Law. The purpose of this Law was articulated by the Senate County and Municipal Government Committee as follows:
As amended by the committee. Senate Bill No. 291, the “Long Term Tax Exemption Law,” consolidates the various statutes under which municipalities may agree witli private entities for the private entities to undertake redevelopment projects in return for tax exemptions. These laws, variously known as the Urban Renewal Corporation and Association Law, the Urban Renewal Nonprofit Corporation Law, the Limited-Dividend Nonprofit Housing Corporation or Association Law, and the Senior Citizen Nonprofit Rental Housing Tax Law[1], contain many overlapping, duplicative, obsolete or confusing provisions. This comprehensive act revises them into one law, based upon the recommendations of the County and Municipal Government Study Commission in its report, Local Redevelopment in New Jersey (1987).
[Senate County and Municipal Government Committee Statement to S.291, reprinted following N.J.S.A. 40A:20-1.]
The Long Term Law contains the following specific finding by the Legislature with respect to the predecessor laws:
The Legislature finds that these laws, separately enacted, contain redundant and unnecessary provisions, or provisions which have outlived their usefulness, and that it is necessary to revise, consolidate and clarify the law m this area in order to preserve and improve the usefulness of the law in promoting the original public purpose.
[N.J.S.A 40A:20-2.]
In order to insure that any uncertainties in the superseded statutes would be resolved and clarified in the manner determined by the Legislature in enacting the Long Term Law, the Law requires that the superseded laws “shall be construed with respect to, and in a manner consistent with, this act.” N.J.S.A. 40A:20-19.
The tax exemption pei’mitted by the Long Term Law does not extend to land, as evidenced by several different provisions of the Law. The Long Term Law requires that the financial agreement for an approved project “shall include the following ... b. That all improvements in the project to be constructed or acquired by the urban renewal entity shall be exempt from taxation as provided in this act.” N.J.S.A. 40A:20-9. The tax exemption provisions of the Law state that “[t]he rehabilitation or improvements made in the development or redevelopment of a redevelopment area or area appurtenant thereto or for a redevelopment relocation hous *574 ing project, pursuant to this act, shall be exempt from taxation for a limited period as hereinafter provided.” N.J.S.A. 40A:20-12. It is important to note that, although the term “project” is defined in the Long Term Law as including land, N.J.S.A. 40A:20-3(e), the tax exemption extends not to the project but to “all improvements in the project,” N.J.S.A. 40A:20-9, and to “rehabilitation or improvements.” N.J.S.A 40A:20-12.
The Long Term Law also provides that “[ajgainst the annual service charge the urban renewal entity shall be entitled to credit for the amount, without interest, of the real estate taxes on land paid by it in the last four preceding quarterly installments.” N.J.S.A. 40A:20-12. This credit would be unnecessary and redundant if the exemption extended, or could extend, to land taxes. That land is not included in the exemption provided by the Long Term Law is further confirmed by N.J.S.A. 40A:20-10 which provides that, in connection with a sale of a project approved by the municipality, “the tax exemption of the improvement shall continue.” The statute does not refer to a tax exemption for land.
As noted above, under N.J.S.A. 40A:20-19, the Limited-Dividend Law must be “construed with respect to, and in a manner consistent with,” the Long Term Law. The two Laws can be interpreted consistently only if N.J.S.A. 55:16-18 is read to authorize an exemption for the improvements in connection with a project and not for land included in the project. Thus, the ambiguous language of the Limited-Dividend Law, which permits a tax exemption if a municipal governing body finds that “the project is or will be an improvement,” N.J.S.A. 55:16-18, must be interpreted in a manner consistent with the Long Term Law as providing a tax exemption for improvements only, and not for land.[1]
*575 Based on the foregoing statutory analysis, I interpret the Financial Agreement and Resolution, both of which define the tax exemption granted to the Project by reference to the Limited-Dividend Law, as providing an exemption only for improvements and not for land. Consequently, the Financial Agreement does not violate the provisions of the Limited-Dividend Law or Long-Term Law, and the tax exemption granted by Jersey City to the Battery View Project is valid under these statutes.
Because I have interpreted the applicable statutory provisions as not authorizing a tax exemption for land, I need not reach the issue of whether a tax exemption for land would be constitutional if included in the Limited-Dividend Law or Long Term Law. Without ruling on the issue, I make the following comments. Defendants and the Attorney General rely on a New Jersey Attorney General’s opinion, Op. Atty. Gen. No. 17 (1950), which determined that the Limited-Dividend Law is constitutional. That opinion, however, did not define or even comment upon the Attorney General’s understanding of the scope of the tax exemption granted by the Limited-Dividend Law and encompassed by his determination of constitutionality. Consequently, the opinion provides no meaningful assistance in determining whether a tax exemption for land would be constitutional under the applicable provisions of the New Jersey Constitution. As to this constitutional issue, I concur with the comment by Judge Small in Tiffany Manor Associates, L.P. v. Newark, 18 N.J.Tax 190 (Tax 1999), that “an exemption for land taxes is questionable under the [New Jersey] Constitution.... ” Id. at 199. See also Ailing Street Urban Renewal Co. v. Newark, 204 N.J.Super. 185, 497 A.2d 1287 (App.Div.1985), where the Appellate Division interpreted Article VIII, § 3, ¶1 of the New Jersey Constitution, which relates to the redevelopment of blighted areas, as providing a tax exemption only for improvements to real property, and suggests that an exemption for land taxes would be unconstitutional. Id. at 191, 497 A.2d 1287.
In Tiffany Manor, Judge Small held that the financial agreement before him contemplated that land taxes would be credited against the PILOT. Battery View asserts in its motion papers *576 that a credit should be permitted if the court rules that land is not exempt from taxation under the Limited-Dividend Law, the Long Term Law, and the Financial Agreement. At oral argument on the motion, plaintiff Town of Secaucus indicated that it did not object to such a result. However, the issue of whether land taxes should be credited against the PILOT was not raised expressly by Battery View’s motion. In light of that fact, and because resolution of the issue appeared appropriate, particularly in view of the positions taken by Secaucus and Battery View, I allowed the parties time to submit any additional materials or arguments for my consideration in deciding the issue.
Jersey City submitted an extensive letter brief asserting the following:
1) based on the land assessment for the Project contained in the tax assessor’s tax exempt list pursuant to N.J.S.A. 54:4-27, the taxes payable on land for the years under appeal would exceed the annual PILOT by the following amounts (not disputed by plaintiffs):
1998 - $ 98,700
1999 - $ 97,476
2000 - $ 97,660
2001 - $ 95,471
Total $389,807
2) requiring payment of these additional amounts would be “devastating to the financial viability of this project” and similar projects; and
3) the only reasonable remedy which would enable the Project and similar projects to remain financially viable under my above ruling that a tax exemption for land is not permitted would be to limit the ruling to future projects and financial agreements. This would allow Battery View and Jersey City to continue under their previous assumption that both land and improvements included in the Project were tax exempt.
In part, Jersey City’s third argument is based on the City’s contention that it and Battery View properly understood the
*577 Limited-Dividend Law to permit a tax exemption for land and that the Legislature indicated its intention to preserve this exemption by including in the legislation repealing the Limited-Dividend Law the following provision:
Any financial agreement entered mto and any tax exemption granted or extended shall remain binding upon the urban renewal entity and the municipality, subject to modification by mutual written consent, as if the law' under which it was entered into, or granted or extended, had not been repealed by P.L.1991, c. 431 (C. 40A:20-1 et seq.).
[L. 1991, c. 431, § 20b.]
This repealer provision has no impact on my ruling as to a tax exemption for land. As explained above, I have concluded that such an exemption was not permitted by the Limited-Dividend Law. The only exemption validly granted was for improvements, and, under my ruling, this exemption “remainfs] binding” in compliance with L. 1991, c. 431, § 20b.
Jersey City’s arguments as to the financial impact on the Project and similar projects of requiring payment of land taxes were supported by Battery View which submitted a certification of the vice-president and general counsel of its managing agent. This certification states that, in order to pay land taxes of approximately $100,000, Battery View would be required to withdraw funds from its reserve account, causing the account to be “woefully underfunded,” or borrow from the New Jersey Housing and Mortgage Finance Agency (NJHMFA). In either event, Battery View would be required to submit to NJHMFA and to the United States Department of Housing and Urban Development (HUD) a request for rental increases to be borne by the tenants of the Project.
I give little weight to the financial impact arguments advanced by Jersey City and Battery View. Jersey City made no factual submission demonstrating any financial impact, no less a “devastating” impact, on the Project or any similar project. The submission by Battery View, which acknowledges that HUD must approve any rent increase, does not discuss whether, or the extent to which, any rent increase would be paid by government subsidy. A rent increase to pay increased real estate taxes is expressly permitted for a low income housing project by 42 U.S.C.A. *578 § 1437f(c)(2)(B). In addition, 42 U.S.C.A. § 1437f(c)(3) provides for HUD rental assistance in an amount equal to the difference between the rent due and the amount the tenant family is required to pay under 42 U.S.C.A. § 1437a(a)1 (generally, a percentage of monthly income). If HUD pays any increase in rent attributable to land taxes, the impact of those taxes on the Project would appear to be minimal.
I recognize that my ruling as to land taxes will result in the imposition on Battery View of financial obligations not contemplated by the Financial Agreement. I conclude that, in light of the public policy favoring the development of housing facilities such as the Project, and in light of the approximately twenty-seven years of consistent practice between Jersey City and Battery View, pursuant to which Battery View paid only an amount equal to the PILOT and no separate land taxes, I should not impose a significant change in their financial arrangements without affording Battery View the opportunity to pursue other remedies, such as an appeal challenging the amount of the land assessment. Cf. Jaydor Corp. v. Millburn Tp., 18 N.J.Tax 655, 657-58 (App.Div. 2000) (approving “an appropriate and pragmatic application of the existing and relevant statutory scheme” under unusual factual circumstances). For the year’s under appeal, therefore, the land included in the Project will be restored to the assessment list at the amount included in the tax assessor’s exempt list. However, Battery View will not be required to pay any additional taxes to Jersey City. Under the Financial Agreement, Jersey City contractually agreed to accept, as the only payment due from Battery View, an amount equal to fifteen percent of gross shelter rents. I conclude that, for the years under appeal, this contractual agreement should bind the parties, and, therefore, payment of fifteen percent of gross shelter rents satisfies Battery View’s obligations for land taxes and the PILOT for those years.
This, result is a form of prospective application of my rulings. Pi’ospective application is appropriate “where a court renders a first-instance or clarifying decision in a murky or uncertain area of the law but under circumstances where members of the public or public entities could be found to have previously *579 and not unreasonably relied on a different conception of the state of the law.” Oxford Consumer Discount Co. v. Stefanelli, 104 N.J.Super. 512, 520-21, 250 A.2d 593 (App.Div.1969), aff'd 55 N.J. 489, 262 A.2d 874 (1970) (citations omitted). The result is also consistent with Judge Small’s determination in Tiffany Manor Assocs. v. Newark, supra, 18 N.J.Tax 190 that land taxes should be credited against the PILOT under the terms of the financial agreement before him. As he noted, the credit is “what was intended by the financial agreement. That interpretation offends neither the Constitution, the statute [(N.J.S.A. 40A:20-12; N.J.S.A. 55:14K-37b)], nor canons of contract interpretation.” Id. at 199.
The Financial Agreement between Batteiy View and Jersey City contemplated only one payment by Battery View, as did the agreement between Tiffany Manor Associates and the City of Newark. For the years under appeal, Jersey City should be held to the terms of the agreement it made.
A major factual distinction between Tiffany Manor and the matter before me is that, in Tiffany Manor, the land taxes were less than the PILOT. Here, as discussed above, the land taxes for each of the years under appeal exceed the PILOT. Consequently, limiting the payment to Jersey City to the annual amount calculated under the Financial Agreement results in a forgiveness or waiver of a portion of the land taxes and a portion of the PILOT. This is a reasonable and equitable result for the years under appeal, based on the discussion above of public policy considerations and the consistent practices of Battery View and Jersey City for approximately twenty-seven years. A reduction in the PILOT does not violate N.J.S.A. 40A:20-12b(1), which permits the percentage of gross revenue payable as the PILOT to be “not ... more than 15% in the ease of a low and moderate income housing project.” That land taxes may be reduced by a municipality under the circumstances before the court is suggested by N.J.S.A. 54:4-96 to -100, which permit a municipality to reduce unpaid taxes in excess of the fair market value of the property on which they were levied.
*580 Limiting the payment by Battery View for tax years 1998 through 2001, when combined with a restoration of the land assessment, will not result in Jersey City’s being responsible for payment of arrears of county taxes under circumstances where it can no longer raise the necessary revenue through property tax collections. The impact on Jersey City’s county tax share for 1998 through 2001, by inclusion of the $6,188,000 assessment on the land included in the Project, will be determined in 2002 or thereafter under N.J.S.A. 54:4-49© (providing for debits and credits to the total valuation of a taxing district’s real property where total assessments for the preceding year or years have been increased or decreased “by reason of final judgments on appeals, complaints and applications----”). Consequently, any increase in Jersey City’s county tax share can be included in the tax rate for the year in which the taxes are payable.
The preceding limitation on the amount payable by Battery View results from consideration of public policy factors and the course of conduct of Battery View and Jersey City, which was based on a misunderstanding of the exemption permitted by the Limited-Dividend Law. Now that the proper extent of the exemption has been clarified, for future years land taxes should be payable. Battery View can appeal the land assessment and seek to reduce land taxes to an amount which will not exceed the PILOT. In any event, in accordance with the preceding analysis, the land taxes payable should be credited against the PILOT. See N.J.S.A. 40A:20-12, which expressly provides for such a credit.
For the foregoing reasons, Battery View’s motion for summary judgment is denied. As noted above, this ruling does not dispose of plaintiffs’ contentions as to the financial return received by owners of partnership interests in Battery View. Counsel for Secaucus shall promptly submit, in accordance with R. 4:42-1(c), a form of Order reflecting the rulings contained in this opinion.

 This conclusion, in effect, grants summary judgment to plaintiffs on the issue raised by Battery View’s motion, even though plaintiffs did not file a cross-motion for summary judgment. This result is permitted under Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 537, 666 A.2d 146 (1995) (stating that: "If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving-party.. .”).